FILED
United States Court of Appeals
Tenth Circuit

February 17, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ADRIAN MIKE,

        Defendant - Appellant.

No. 09-2230

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:07-CR-01334-WJ-1)**

Joseph W. Gandert, Assistant Federal Public Defender (Michael A. Keefe, Assistant Federal Public Defender, on the briefs) Albuquerque, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (Kenneth J. Gonzales, United States Attorney, with him on the brief) Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **BRISCOE,** Chief Circuit Judge, **HOLLOWAY**, Circuit Judge, and **MELGREN**, District Judge.[*]

**MELGREN**, District Judge.

        In 2009, Appellant Adrian Mike pled guilty to the charge of assault resulting in

_____

[*] The Honorable Eric F. Melgren, United States District Judge, District of Kansas, sitting by designation.

serious bodily injury. Following his plea, the district court sentenced Mike to two years of imprisonment and three years of supervised release. Because Mike had committed a sex offense in 1997, the court imposed, in addition to the standard conditions of supervised release, the district's standard supervised release conditions for sex offenders, as well as a number of special conditions of supervision. Mike objected to the imposition of some of these conditions. The court overruled most of Mike's objections and Mike appeals that decision. We have jurisdiction under 28 U.S.C. § 1291, and AFFIRM in part, REVERSE in part, and REMAND to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

On August 28, 2006, Mike assaulted a 74 year-old man in whose home he had been drinking. The assault occurred after the victim returned home and discovered that Mike and several of his relatives were drunk. According to Mike, the victim placed his hands on Mike's neck and ordered Mike to leave his home. In response, Mike shoved the victim to the floor, which resulted in the victim sustaining a fractured pelvis, fractured shoulder, and fractured wrist.

A grand jury returned an indictment against Mike, charging him with assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Mike pled guilty to the indictment pursuant to the terms of a Rule 11(c)(1)(C) plea agreement to a term of twenty-four months of imprisonment and three years of supervised release.

At sentencing, the court sentenced Mike to twenty-four months of imprisonment

and three years of supervised release. In addition to the standard conditions of supervised release, which include a condition requiring the defendant to inform third parties of his criminal record, the court imposed the district's standard sex offender conditions in light of the fact that Mike had committed a sex offense in 1997. These include the following conditions: (1) the defendant shall not possess any sexually explicit materials; (2) the defendant shall submit to search of person, property, vehicles, business, computers, and residence, to be conducted in a reasonable manner and at a reasonable time, for the purpose of detecting sexually explicit materials; (3) the defendant shall immediately undergo a psychosexual evaluation upon release and begin participating in sex offender treatment, consistent with the recommendations of the psychosexual evaluation, and furthermore, the defendant shall submit to clinical polygraph testing and any other specific sex offender testing, as directed by the probation officer; and (4) the defendant shall participate in a mental health program as directed by the probation officer which may include taking prescribed medication.

In addition to the standard sex offender conditions, the court ordered that the following special conditions be imposed: (1) the defendant must participate in a substance abuse treatment program, which may include drug testing, outpatient counseling, or residential placement; (2) the defendant may not engage in an occupation where he has access to children without prior approval from his probation officer; (3) the defendant must not have contact with children under the age of eighteen, and if such contact does occur, the defendant must report it to the probation officer; (4) the defendant must

participate in a mental health program, which may include outpatient counseling, residential placement, or prescribed medication as approved by the probation officer; (5) the defendant may not loiter within 100 feet of a place used primarily by children under the age of eighteen; (6) the defendant may not volunteer for activities where he will be supervising children or adults with mental or physical disabilities; and (7) the defendant may not possess or use a computer or other related hardware without approval by the probation officer.

Mike objected to the imposition of the standard sex offender conditions. Mike contended that these conditions should not be imposed because they were not related to the present offense and were not reasonably related to the goals of deterrence, public protection, or rehabilitation. The court admitted that it had never faced the issue of having to sentence a prior sex offender for a non-sex offender crime, and asked the parties to brief the matter. The court indicated that it would refrain from filing judgment until the issue was resolved.

In his brief to the court, Mike objected to the following six conditions: (1) the condition mandating sex offender treatment and testing; (2) the condition that he have no contact with children; (3) the condition prohibiting him from engaging in an occupation with access to children; (4) the condition barring him from loitering in any place children may be; (5) the condition limiting the types of activities he could volunteer for; and (6) the condition declaring that he is not to possess or use a computer. The court overruled Mike's objections to the first five conditions, but sustained his objection to the last

condition. The court held that the first five conditions were consistent with a sentence that was sufficient, but not greater than necessary, to protect the public from further crimes committed by Mike and to provide Mike with correctional treatment in the most effective manner possible. The court reached these conclusions because both of Mike's crimes involved a violent assault; that psychosexual and psychological evaluations performed on Mike in 2004 and 2008 revealed that Mike had serious problems with substance abuse and poor impulse control; that Mike's 1997 sexual offense was particularly gruesome;[1] and that Mike had failed to comply with the sex offender registration requirements. The court determined that Mike could possess and use a computer, but that any computer he possessed would be subject to monitoring by the probation officer.

Accordingly, the conditions of Mike's supervised release ordered by the court in the judgment were the same as those initially announced, with two exceptions: first, there was no condition stating that Mike could not possess or use a computer; second, there were conditions setting forth how Mike's computer use would be monitored ("the computer monitoring conditions"): (1) the defendant consents to the probation officer conducting periodic examinations of his computer; (2) the defendant consents to the probation officer installing on his computer any software systems to monitor his computer

---

[1] "The record shows that [Mike] had sexual intercourse with an unconscious minor. He and two minors, acting at his direction, also sexually assaulted the victim with foreign objects resulting in severe damage to her vaginal area. [Mike] then left the victim unconscious overnight in an open field." *United States v. Mike*, 1999 WL 100913, at *1 (10th Cir. Mar. 1, 1999) (unpublished).

use and to warning others of the probation officer's ability to place monitoring software on his computer or any such computer he may have access to; (3) the defendant consents to the probation officer placing tamper resistence tape over unused ports and sealing his computer case; (4) the defendant consents to maintaining a current inventory of his computer access, including, but not limited to, any bills pertaining to computer access, and shall submit on a monthly basis any card receipts/bills, telephone bills used for modem access, or any other records accrued in the use of a computer to the probation officer; and (5) the defendant shall not make any changes to his computer services, user identifications, or passwords without the prior approval of the probation officer.

## II.  STANDARD OF REVIEW

When the defendant objects to a special condition of supervised release at the time it is announced, this Court reviews for abuse of discretion.  *See United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1687 (2009).  However, when the defendant fails to object, we review for plain error.  *See United States v. Barajas*, 331 F.3d 1141, 1145 (10th Cir. 2003).  To establish plain error, the defendant must show: "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (quotation omitted).  "We conduct this analysis less rigidly when reviewing a potential constitutional error."  *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (internal quotation marks omitted).

-6-

## III. ANALYSIS

On appeal, Mike raises objections to the following conditions of release: (1) the computer monitoring conditions; (2) the condition mandating sex offender treatment and testing; (3) the condition stating that he is to have no contact with children; (4) the condition prohibiting him from engaging in an occupation with access to children; (5) the condition requiring third party notification; (6) the conditions commanding participation in a mental health treatment program; (7) the condition ordering participation in a substance abuse treatment program; and (8) the condition forbidding him from possessing sexually explicit materials.

District courts have broad discretion to prescribe special conditions of release. *See, e.g., United States v. Hanrahan*, 508 F.3d 962, 970 (10th Cir. 2007). However, this discretion is not without limits. For instance, the conditions imposed "must satisfy the three statutory requirements laid out in 18 U.S.C. § 3583(d)." *See Hahn*, 551 F.3d at 983. First, they must be reasonably related to at least one of following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs. *See id.* at 983-84; 18 U.S.C. § 3583(d)(1). Second, they must involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation. *See* 18 U.S.C. § 3583(d)(2). Third, they must be consistent with any pertinent policy statements issued by

the Sentencing Commission. *See id.* at § 3583(d)(3). In addition to the statutory requirements, the conditions must also comport with the relevant constitutional provisions. *See, e.g., United States v. Huffman*, 146 Fed. Appx. 939, 944 (10th Cir. 2005) (unpublished) (Article III's grant of authority over cases and controversies to the courts limits the courts' ability to delegate federal judicial power to non-Article III persons or entities (citing *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005))).

Before turning to the question of whether the challenged conditions meet the standards set forth by the governing law, the Court addresses a ripeness argument raised by the Government in both its briefing and oral argument. The Government contends that this matter is not ripe for review for two reasons: first, Mike has not started serving the terms of his supervised release; and second, Mike must first seek a modification of his terms of supervised release from the sentencing court before he can file an appeal. Both of the Government's contentions are erroneous. Contrary to the Government's assertion, Mike has completed his term of imprisonment and is currently subject to enforcement of the terms of his supervised release. Furthermore, as we stated in *United States v. Smith*, 606 F.3d 1270 (10th Cir. 2010), supervised release terms are directly appealable, despite the fact that they are subject to later modification, because they "are part of the sentencing court's final orders." 606 F.3d at 1283 n.4. Therefore, we reject the Government's ripeness argument.

### The Computer Monitoring Conditions

Mike raises four challenges with regard to the computer monitoring conditions:

-8-

first, he claims that the sentencing court erred by not making any particularized findings

or providing a generalized statement of its reasoning for imposing these conditions;

second, he argues that the conditions are not reasonably related to his history and

characteristics, the nature and circumstances of his offenses, or any of the sentencing

goals set forth in 18 U.S.C. § 3553(a)(2); third, he avers that the conditions are

impermissibly vague, as it is not clear whether they apply only to computers he owns or

also to computers owned by others; and fourth, he contends that the conditions involve a

greater deprivation of liberty than is reasonably necessary to deter criminal activity,

protect the public, or promote his rehabilitation.[2]  Mike failed to raise any of these

challenges to the district court.  Normally, this failure would result in plain error review.

However, because the court first announced these conditions in its written judgment, thus,

stripping Mike of an opportunity to object to them, we will review his challenges under

the abuse of discretion standard.  *See* Fed. R. Crim. P. 51(b), *United States v. Edgin*, 92

F.3d 1044, 1049 (10th Cir. 1996).

Mike's first challenge lacks merit.  A sentencing court need not provide reasons

for each specific special condition that it imposes; rather, it must "only provide a

generalized statement of its reasoning."  *See, e.g., Hahn*, 551 F.3d at 983.  Our holding in

---

[2] It appears that Mike is attempting to also argue that a court may only impose computer-related restrictions in cases where the defendant had used a computer to commit an offense.  Mike offers no support for this argument and does not develop it beyond simply citing U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5D1.3(d)(7)(B) and noting that neither of Mike's convictions involved a computer.  Because Mike has not adequately briefed this argument, we will not consider it.  *See, e.g., United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995).

*Hahn* illustrates this point. There, we held that the sentencing court had satisfied the requisite burden by stating that its imposition of twelve special conditions of supervised release was appropriate in light of the defendant's history and characteristics, the fact that the sex crimes occurred immediately after the cessation of the offense the defendant was charged with, and the fact that the defendant's probation officer is charged with supervising the defendant and not just the crime of which he has been convicted. *Id.* at 983. Consistent with *Hahn*, the sentencing court here provided its general rationale for imposing computer monitoring conditions and the sex offender conditions Mike had challenged: the results of psychological evaluations performed on Mike in 2004 and 2008, the nature of Mike's 1997 sexual offense, and the fact that Mike had failed to comply with his sex offender registration requirements. We find that this meets the applicable standard, and, thus, reject Mike's first challenge.

We also reject Mike's second challenge. While it is true that Mike's offense of conviction did not involve a computer and there is no evidence in the record showing that Mike had a history of using computers in an abusive manner, these facts are not dispositive here. In 1997, Mike committed a particularly gruesome sex offense. Furthermore, psychosexual evaluations that were performed in 2004 and 2005 revealed that Mike had a "sex deviance problem involving rape," that "he did not take full responsibility for his sexual misconduct, and [that] he may possibly have emotional problems associated with inadequacy in social/sexual interactions involving age-appropriate females." ROA, Vol. 2, at 25. In addition, a 2008 mental health assessment

showed that Mike has "serious problems in the area of substance abuse, anxiety, delusional thinking and poor impulse control." *Id.* at 18. In light of these facts, and the prevalence of content on the internet that appeals to individuals prone to committing sexual offenses, we cannot say that the court abused its discretion in finding that the monitoring of Mike's computer usage was reasonably related to the goals of protecting the public from further crimes committed by Mike and providing Mike with the correctional treatment he needs. As a result, we will not vacate the conditions on this ground.

Although Mike's first two challenges fail, his third does not. Recently, in *United States v. Matteson*, 327 Fed. Appx. 791 (10th Cir. 2009) (unpublished), we were faced with a case that involved a computer monitoring condition very similar to one of the conditions at issue here.[3] There, the defendant argued that the condition was infirm for two reasons: first, it was overly vague, and second, it was too intrusive to comply with

---

[3] The challenged condition stated:

The defendant shall consent, at the direction of the United States Probation Officer, to having installed on his/her computer(s), any hardware or software systems to monitor his/her computer use. The defendant understands that the software may record any and all activity on his/her computer, including the capture of keystrokes, application information, Internet use history, e-mail correspondence, and chat conversations. Monitoring will occur on a random and/or regular basis. The defendant further understands that he/she will warn others of the existence of the monitoring software placed on his/her computer or *any such computer [to which] the defendant may have access*.

*Matteson*, 327 Fed. Appx. at 792 (emphasis in the original).

either § 3583(d)(2)'s requirements or the Fourth Amendment. *Matteson*, 327 Fed. Appx. at 792. Because we agreed with the defendant that the condition was vague, as it could be reasonably interpreted to apply to any computer he used, not just the one he owned, we remanded the matter back to the sentencing court for clarification.

Here, we are presented with essentially the same problem we faced in *Matteson*: it is not clear to which computers the conditions in question apply. In its response, the Government argues that the conditions "cannot be read fairly to encompass public computers or computers owned by employers." Appellee Br. 28. We disagree. Computer monitoring condition two states that "[t]he defendant further understands that he/she will warn others of the existence of the monitoring software placed on his/her computer or *any such computer the defendant may have access*." ROA, Vol. 1, at 41-42 (emphasis added). Additionally, computer monitoring condition four states that the defendant "shall submit on a monthly basis any card receipts/bills, telephone bills used for modem access, or any other records accrued in the use of *a computer* to the probation officer." *Id.* at. 42 (emphasis added). Due to the presence of the above language, we find that the probation officer could reasonably believe that the computer monitoring conditions apply not only to computers that Mike owns, but also to those owned by others, including Mike's employer. As a consequence, we remand these conditions to the district court to clarify their scope. If on remand the court decides that it intends for the computer monitoring conditions to apply to computers owned by Mike's employers, it must make the necessary findings, which we outline *infra* in our discussion of the

condition limiting the types of occupations that Mike may engage in.

In light of our holding, we will not address Mike's deprivation of liberty argument. *See Matteson*, 327 Fed. Appx. at 793 (remanding without deciding the issue of whether the condition at issue was too intrusive).

### Sex Offender Treatment and Testing Condition

Mike contends that this condition is infirm because it improperly delegates to the probation officer the discretion to decide whether he will be subject to inpatient treatment and/or penile plethysmographic testing, requirements he claims implicate significant liberty interests. The Government counters by arguing that because the district court clearly mandated that Mike participate in sex offender treatment and testing, it could permissibly delegate to the probation officer the decision of which types of treatment and testing that would be employed. Mike raised this argument to the district court, therefore, we will review for abuse of discretion.

It is well established that "[p]robation officers have broad authority to advise and supervise probationers . . . ." *Pruden*, 398 F.3d at 250; *accord United States v. Rodriguez*, 558 F.3d 408, 414-15 (5th Cir. 2009). There are limits to this authority, though. For instance, Article III prohibits a judge from delegating the duty of imposing the defendant's punishment to the probation officer. *See, e.g., United States v. Kent*, 209 F.3d 1073, 1078 (8th Cir. 2000). In determining whether a particular delegation violates this restriction, courts distinguish between those delegations that merely task the probation officer with performing ministerial acts or support services related to the

-13-

punishment imposed and those that allow the officer to decide the nature or extent of the defendant's punishment. *See United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005); *Pruden*, 398 F.3d at 250. Delegations that do the former are permissible, while those that do the latter are not.

Recently, in *United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009) (per curiam), the Ninth Circuit addressed the question of whether a district court could permissibly delegate to a probation officer the decision of whether the defendant was to be subject to inpatient treatment. There, the defendant contended that the delegation was infirm because inpatient treatment is a condition so different in kind from other forms of treatment that to allow his probation officer to decide whether he would be required to participate in such treatment would mean that the officer would be deciding the nature or extent of his punishment. The government responded by claiming that the decision between whether treatment would be inpatient or out was merely a ministerial one, and, as a result, could be delegated. The Ninth Circuit sided with the defendant, stating that, in light of the liberty interest implicated by residential treatment, the probation officer could not be given the discretion to decide whether the defendant must participate in such treatment.

We find the Ninth Circuit's approach of focusing on the liberty interest implicated when determining whether a particular delegation is infirm to be correct. Conditions that touch on significant liberty interests are qualitatively different from those that do not. *See United States v. Stoterau*, 524 F.3d 988, 1005-06 (9th Cir. 2008) (implicitly recognizing

this fact by requiring the district court to make special findings before imposing a condition that implicates a significant liberty interest). In light of this difference, we are of the belief that granting the probation officer the discretion to decide whether such conditions will be imposed is tantamount to allowing him to decide the nature or extent of the defendant's punishment. Accordingly, we hold that any condition that affects a significant liberty interest, such as one requiring the defendant to participate in residential treatment, *see, e.g., Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty . . . ."), or undergo penile plethysmographic testing, *see, e.g., United States v. Weber*, 451 F.3d 552, 563 (9th Cir. 2006), must be imposed by the district court and supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing, *see, e.g., id.* at 561.

With it established that a district court cannot delegate the decision of whether to subject a defendant to residential treatment or penile plethysmograph testing to the probation officer, we turn to the condition at issue. The condition in this case, unlike the one in *Esparza*, does not explicitly state that the probation officer has the discretion to force Mike to participate in residential treatment nor does it say that plethysmograph testing is an option. However, due to its open-ended language, the condition could be read to delegate such discretion. When reviewing challenges to non-specific, all-encompassing conditions like the one here, other courts have opted to construe them in a

-15-

manner that does not make them infirm. *See, e.g, United States v. Daniels*, 541 F.3d 915, 926 (9th Cir. 2008) (finding that a condition that ordered the defendant to "take all prescribed medication" must necessarily be understood not to include medications that implicated significant liberty interests because the district court did not make the necessary findings). We believe this approach is best, as we see no reason to require "district courts to include language eliminating all potential forms of treatment [or testing] not contemplated at the time of sentencing." *United States v. Villamil*, 383 Fed. Appx. 632, 633 (9th Cir. 2010). Construing the challenged condition as not delegating to the probation officer the authority to decide whether to subject Mike to inpatient treatment or plethysmograph testing, we conclude that it does not delegate the duty of imposing Mike's punishment to the probation officer. As a result, we reject Mike's challenge to this condition.

### Prohibition on Contact with Children Condition

Mike presents two challenges to this condition.[4] The first is that the condition is vague and suffers from overbreadth, as it offers no guidance in determining what constitutes contact with children and effectively excludes him from all places where children may be. The second is that the condition violates the Fifth Amendment by "plac[ing] [Mike] in a position necessitating a choice 'between making incriminating

---

[4] Mike also states that the condition imposes a greater deprivation than is reasonably necessary. Mike does not develop this argument nor does he cite any authority in support of it. As a result, we do not address it. *See, e.g., Kunzman*, 54 F.3d at 1534.

statements and jeopardizing his conditional liberty by remaining silent.' " Appellant Br. 29-30 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984)). Mike fairly raised these challenges to the district court so our review is for abuse of discretion.

In support of his first argument, Mike cites *United States v. Peterson*, 248 F.3d 79 (2d Cir. 2001), and *United States v. Smyth*, 213 Fed. Appx. 102 (3d Cir. 2007) (unpublished). In *Peterson*, the Second Circuit vacated a condition prohibiting the defendant from "being on any school grounds, child care center, playground, park, recreational facility or in any area in which children are likely to congregate" on the ground that is was ambiguous, and, depending on its construction, excessively broad. 248 F.3d at 86. In *Smyth*, the Third Circuit vacated a condition stating that the defendant "shall not associate with children, other than his own children, under the age of 18." 213 Fed. Appx. at 104. As is clear from its opinion, the *Smyth* court's decision hinged on the fact that the sentencing court itself could not say how the condition would be imposed when pressed by defense counsel. *Id.* at 107.

*Peterson* and *Smyth* are distinguishable from the present case. To begin with, the condition vacated in *Peterson* is different in kind from the one at issue here, as it imposed a location restriction, not an associational restriction. Furthermore, the Third Circuit's ruling in *Smyth* was motivated by the fact that not even the sentencing judge could tell the defendant how the restriction would be imposed, a fact not present here. As a consequence, both of these cases' holdings are of little persuasive value in this case.

Two cases that we believe are more on point are *United States v. Loy*, 237 F.3d

-17-

251 (3d Cir. 2001), and *United States v. Paul*, 274 F.3d 155 (5th Cir. 2001), *cert. denied*, 535 U.S. 1002 (2002). In *Loy*, the Third Circuit rejected the defendant's contention that a condition barring him from having any unsupervised contact with minors was vague because it was unclear whether it applied to casual or unavoidable contact made in public places. 237 F.3d at 268. The court premised its rejection on the fact that "it is well established that associational conditions do not extend to causal or chance meetings." *Id.* at 269. In *Paul*, the defendant challenged, among other things, a condition requiring him to avoid "direct and indirect contact with minors" on overbreadth grounds. 274 F.3d at 165. The defendant claimed that the inclusion of the word "indirect" meant that the condition encompassed chance or incidental encounters with children. *Id.* at 166. Citing to *Loy*, the Fifth Circuit denied this challenge, stating that, properly interpreted, the condition did not include such encounters. *Id.* We believe the Third and Fifth Circuits' interpretation of associational restrictions similar to the one here is correct. As a result, we find no merit to Mike's vagueness and overbreadth arguments.

We also find that Mike's Fifth Amendment argument is meritless. The Fifth Amendment provides, in relevant part, that no person "*shall be* compelled in any criminal case to be a witness against himself." U.S. CONST. amend V (emphasis added). In claiming that this condition runs afoul of this provision, Mike cities to *United States v. Saechao*, 418 F.3d 1073 (9th Cir. 2005). In *Saechao*, the defendant was trying to have incriminating statements *he had already made* to his probation officer suppressed on the ground that one of his conditions of release compelled him to make the statements. 418

-18-

F.3d at 1076. Mike's reliance on *Saechao* is misplaced, as a crucial distinction exists between that case and this one: the defendant here has yet to make any incriminating statements. Because no incriminating statements have been made, the Fifth Amendment is not implicated. As a result, the condition will not be vacated on this ground. *See Zinn*, 321 F.3d 1084, 1091-92 (11th Cir. 2003) (rejecting the defendant's argument that a condition requiring him to be subjected to polygraph testing violated his Fifth Amendment rights because the defendant had not yet been compelled to give incriminating statements).

*No Occupation with Access to Children Condition*

Mike raises several issues with regard to this condition; we only need to address one, though: the said condition constitutes an improper occupational restriction. Mike objected to the imposition of this condition to the district court, therefore, our review is for abuse of discretion.

A sentencing court may impose a condition prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it finds that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

U.S.S.G. § 5F1.5(a)(1)-(2). Additionally, the court must find that the "occupational restriction is the minimum restriction necessary." *United States v. Souser*, 405 F.3d 1162, 1167 (10th Cir. 2005).

The condition in question here clearly prohibits Mike from engaging in certain occupations. Therefore, the sentencing court was required to make the aforementioned findings, which it failed to do. As a result, we vacate and remand this condition.

### Third Party Notification Condition

Based on our holding in *Souser*, 405 F.3d 1162, Mike contends that to the extent this condition requires him to notify potential employers or educational programs about his criminal convictions, it is infirm because such notification constitutes an occupational restriction and the court did not make the findings required by law. The Government agrees. So do we. As a result, we vacate this condition to the extent it requires such notification. If on remand, the court still wishes to require Mike to notify his employer and/or educational program, it must make the necessary findings.

### Mental Health Program and Prescribed Medication Conditions

Mike raises two challenges with regard to the conditions requiring him to participate in a mental health program and to take the prescribed medication. The first is that the portion of the conditions stating that he must take the medication that is prescribed is overly broad because it is not explicitly limited to medication reasonably necessary for effective treatment. The second is that the conditions impermissibly delegate to his probation officer the decision of whether he must participate in inpatient

treatment and take psychotropic drugs, requirements he claims implicate significant liberty interests. Mike failed to raise either of these arguments to the district court, thus, our review is for plain error.

Mike's first argument is based on the holding in *United States v. Cope*, 527 F.3d 944 (9th Cir.), *cert. denied*, 129 S. Ct. 321 (2008). In that case, the Ninth Circuit found that the requirement that the defendant " 'shall take all prescribed medication' [wa]s overbroad insofar as it is not clearly limited to medications that are reasonably related to sex offender treatment." *Cope*, 527 F.3d at 956. Due to this finding, the court vacated and remanded the condition to the district court. *Id.*

We are unpersuaded by the holding in *Cope*. We believe that viewing the medication requirements at issue here in the context in which they were placed reveals that Mike must only take those medications that are related to his mental health programs. *Cf. United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003) (determining the scope of a restriction by looking at the context in which it is placed); *United States v. Cutler*, 259 Fed. Appx. 883, 887 (7th Cir. 2008) (same). As a result, we reject Mike's overbreadth argument.

Mike's second argument raises two issues: first, can a court delegate the decision of whether a defendant must participate in residential treatment, and second, can a court delegate the decision of whether a defendant must take psychotropic medications. Starting with the first, as we noted above, it is error for a court to grant to the probation officer the discretion to determine whether the defendant will participate in residential

treatment. Here, the special condition dealing with mental health treatment requires Mike to participate in a mental health treatment program, which may include "residential placement," as approved by the probation officer. Thus, while the court clearly ordered participation in some type of program, it expressly left the decision of whether the program would be residential to the probation officer.[5] This was error. However, this error was not plain at the time of appeal, as this Court had not decided the issue and there appears to be a split in the circuits.[6] *See, e.g., United States v. Juarez-Galvan*, 572 F.3d 1156, 1160-61 (10th Cir. 2009) (stating that an error is not plain when we have yet to address an issue and the case law from other circuits appears to conflict). As a consequence, we do not vacate the portion of the special condition that relates to the type of mental health program to which Mike will be subject.

With regard to the second issue, we have not had occasion to address it. However, our earlier discussion on delegation sheds light on the matter. As stated above, a district court cannot delegate decisions that implicate significant liberty interests because such delegations allow the probation officer to determine the nature or extent of the

_____

[5] The standard condition dealing with mental health treatment did not expressly delegate such discretion to the probation officer. Therefore, we do not construe the condition as delegating the duty of imposing Mike's punishment to the probation officer.

[6] *Compare United States v. Cutler*, 259 Fed. Appx. 883, 887 (7th Cir. 2008) (unpublished) (stating that it is permissible for the probation officer to determine the "level of treatment [the defendant] would receive – inpatient treatment or outpatient treatment") and *United States v. Calnan*, 194 Fed. Appx. 868, 870-71 (11th Cir. 2006) (unpublished) (per curiam) (same) *with Esparza*, 552 F.3d at 1091 (finding that a court cannot delegate to the probation officer the decision of whether the defendant will be subject to inpatient treatment).

defendant's punishment. It is well established that individuals have a significant interest in avoiding the involuntary administration of psychotropic drugs. *See United States v. Bradley*, 417 F.3d 1107, 1113 (10th Cir. 2005); *United States v. Williams*, 356 F.3d 1045, 1057 (9th Cir. 2004). As a consequence, district courts cannot delegate the decision of whether to force the defendant to take psychotropic drugs to the probation officer.

Here, neither of the conditions relating to mental health treatment explicitly delegate such discretion to the probation officer. Therefore, we do not construe the conditions as doing so. Because of this fact, we do not find the portions of the conditions discussing the administration of medication to be infirm.

### Substance Abuse Treatment Condition

Mike claims for the first time on appeal that this condition is infirm because it impermissibly delegates to his probation officer the decision of whether he must participate in residential treatment. The condition at issue requires Mike to participate in and complete a substance abuse treatment, but expressly delegates to the probation officer the decision of whether such treatment will be residential. Because Mike did not raise this argument to the district court our review is for plain error.

As noted in the previous section, at the time of this appeal, it was not plain error for a district court to delegate to the probation officer the discretion of whether the defendant must participate in residential treatment. Accordingly, we do not vacate this

condition.[7]

***Prohibition on Possessing Sexually Explicit Materials Condition***[8]

Mike contends that this condition is unrelated to his criminal history and the goal of preventing recidivism, is overly broad, and effects a greater deprivation of liberty than is necessary to achieve the goals of sentencing. Mike did not object to the imposition of this condition in his brief to the district court. Nevertheless, Mike now argues that his claim should not be subject to plain error review because the district court understood him to be objecting to all of the sex offender conditions imposed. We disagree. If Mike wanted to preserve his objections to this condition, he should have raised them in the same brief that he raised his objections to six of the other conditions the court imposed. Because he failed to do this, our review is for plain error.

Mike's first argument fails. This argument is premised upon the fact that there is no evidence that Mike has ever abused or even possessed pornography in the past, much less that it is likely to lead him to commit a sexual offense in the future. Two circuits

---

[7] In his reply, Mike contends that we must vacate this condition in its entirety because the Government did not respond to the argument he raised with regard to it. We disagree. The cases relied on by Mike are inapposite here. In those cases, we were addressing what happens when an appellant fails to raise an argument, not when the appellee does.

[8] Mike also cites the condition stating that he shall submit to searches conducted in a reasonable manner and at a reasonable time for the purpose of detecting sexually explicit material. However, Mike never puts forth an argument for why this condition is infirm. Therefore, he has waived any objection he may have had to it. *See, e.g., Fuershbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1209-10 (10th Cir. 2006) (finding that the appellant had waived her claim by "mak[ing] no argument, cit[ing] to no authority, and direct[ing] us to no evidence supporting an appeal on this issue").

have held in circumstances similar to those presented here that such a ban is impermissible. *See United States v. Perazza-Mercado*, 553 F.3d 65, 75-79 (1st Cir. 2009); *United States v. Voelker*, 489 F.3d 139, 150-53 (3d Cir. 2007). However, at least one circuit has reached a different conclusion. *See United States v. Bee*, 162 F.3d 1232, 1234-35 (9th Cir. 1998).[9] Therefore, in light of this split, and Mike's background, namely the psychosexual evaluations performed in 2004 and 2005, the 2008 mental health assessment, and the gruesomeness of his 1997 sex offense, we cannot say that it is obvious or clear that the ban on his possession of sexually explicit materials is not reasonably related to any of the factors discussed in 18 U.S.C. § 3553(a). Thus, the court did not plainly err.

Mike's second and third arguments are, in essence, the same. Therefore, we will review them together. According to Mike, this condition is overly broad and imposes too great of a deprivation of liberty because it prohibits him from possessing a copy of his presentence report, which discusses his sexual assault offense, writings that may be required for his court-ordered sex offender treatment, and adult pornography. Mike cites *Cope*, 527 F.3d 944, in support of his contention that the said condition includes his presentence report and writings from treatment. In *Cope*, the Ninth Circuit found that a condition similar to the one at issue here was overly broad because it "straightforwardly

_____

[9] In cases where the offense of conviction involved child pornography, a number of courts have held that a ban on adult pornography is not problematic. *See, e.g., United States v. Brigham*, 569 F.3d 220, 232-34 (5th Cir. 2009); *United States v. Rearden*, 349 F.3d 608, 619-20 (9th Cir. 2003).

applie[d]" to the defendant's own presentence report, copies of statutes and cases that the defendant might need were he to bring a collateral challenge to an aspect of his sentence once he is released from prison, and a sexual autobiography that may be a required element of the defendant's sex offender treatment program. 527 F.3d at 957-58. Because of this breadth, the court vacated the condition.

We find the Ninth Circuit's approach for interpreting release conditions to be overly technical, and opt instead for a more commonsense one. *See United States v. Brigham*, 569 F.3d 220, 234 (5th Cir. 2009) (reviewing a condition prohibiting the defendant from possessing "any pornographic, sexually oriented or sexually stimulating materials" in a "common-sense way"). Applying a commonsense approach, we do not find that the condition at issue includes Mike's presentence report or any writings that may be part of his treatment. Therefore, we will not vacate on this ground. We also will not vacate the condition because of its prohibition on Mike possessing adult pornography. Given the current state of the law, we cannot say that it is clear or obvious that the imposition of a condition prohibiting a defendant, who has committed a sexual offense, but not a sexual offense involving pornography, from possessing legal, adult pornography is a greater deprivation of liberty than is reasonably necessary. *Compare Bee*, 162 F.3d at 1234-35 (upholding a condition prohibiting the possession of pornography under a similar attack), and *United States v. Carpenter*, 280 Fed. Appx. 866, 869 (11th Cir. 2008) (unpublished) (stating that a condition banning the possession of sexually explicit materials involving adults was not overly broad), *with Voelker*, 489 F.3d at 153 (vacating

a similar condition). As a consequence, Mike's overbreadth and greater deprivation than is necessary arguments fail.

## IV. CONCLUSION

The sentence is AFFIRMED in part, VACATED in part, and REMANDED to the district court for further proceedings consistent with this opinion. Mike's unopposed motion to seal the briefs is GRANTED.